MARK T. JOHNSON (SBN 76904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

JAMES C. STURDEVANT (SBN 94551)
jsturdevant@sturdevantlaw.com
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

LAW OFFICE OF PAUL ADELMAN
Paul Adelman (Alaska BN 9406021)
(*Pro Hac Vice*)
adelman@alaska.net
425 G St. Ste 910
Anchorage AK 99501-2140
Telephone: (907) 277-5286
Facsimile: (907) 277-5288

Attorneys for Plaintiffs and the Plaintiff Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGALY EAGAN and CAROL A. SPINNER, individually and on behalf of all other similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY and Does 1-10,<br><br>Defendant. | CASE NO. CV 06-7637 DSF (JTLx)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 6, 2011<br>Time: 1:30 p.m.<br>Dept: 840<br>Judge: The Honorable Dale S. Fischer |

## I. INTRODUCTION

Plaintiffs Magaly Eagan, Carol Spinner and Evans Walker (collectively, "Plaintiffs") submit this supplemental Memorandum of Points and Authorities in Support of Plaintiffs' Motion For Final Approval of Class Action Settlement to report to the Court that the parties have fully complied with this Court's December 3, 2010 Order Granting the Motion for Preliminary Approval (Dkt. 147), directing the notice of settlement to the Class. Of the more than 10,625 affected class members to whom notice was mailed, only 21 excluded themselves and only three (3) objected. (*See* Declaration of James C. Sturdevant Regarding Timely Requests for Exclusion and Objections ("Sturdevant Decl."), filed on April 8, 2011 [Dkt. 156], at ¶¶ 3-18; *see also Ex Parte* Application to Reschedule Dates and Opt Outs, Objections and Fairness Hearing ("*Ex Parte* App.") filed on April 8, 2011 [Dkt. 155], at 1:18-2:23; Plaintiffs' Opposition to *Ex Parte* Application ("*Ex. Parte* Opp."), filed this date [Dkt. 158], at 5:1-6.)

Approximately ten percent of the settlement class did not receive mailed notice of the settlement. Defendant moved to again postpone the fairness hearing. (*See Ex Parte* App. at 4:1-9.) Plaintiffs opposed this relief, instead arguing that the fairness hearing should go forward and the mailed notice to 991 settlement class members should also occur. (*See Ex Parte* Opp. at 4:11-6:8.) Plaintiffs argued that the settlement should be approved provisionally, subject to the Court's consideration of any objections which may differ and may be filed from any of the 991 absent class members who will be mailed further notice. (*Id*.) The Court granted Defendant's motion and rescheduled the fairness hearing for June 6, 2011.

## II. ARGUMENT

### A. Affected Class Members Have Been Provided Adequate Notice Of The Settlement

After the hearing November 29, 2010, this Court granted preliminary approval of the settlement, approved the proposed notice, and authorized dissemination of the notice to the class. (Dkt. 147.) In accordance with Section VI of the Court's order and

1

paragraphs 26, 27, and 47 of the Stipulation of Settlement (Dkt. 142-3), the approved notice was mailed to Class Members by the Settlement Administrator, Aon Hewitt, in conjunction with its onsite manual assembly vendor, Cliff Bregstone Incorporated ("CBI") on or before December 17, 2010.  (Joint Stipulation re Class Notice ("Joint Stip."), filed herein on February 4, 2011 [Dkt. 153], at 1:2-2:17; *see also Ex Parte* App. 1:18-28.)  The Settlement Administrator was provided with Class Members' names, last known addresses, and other contact information from Defendant AXA.  (*Id*.)  This information was used to mail the more than 10,625 notice packets to the best possible address known to AXA for Class Members.  (*Id*.)

In or about mid-January, 2011, the parties had reason to believe that class notice may not have been received by all class members.  (Joint Stip. at 2:18-3:17; *Ex Parte* App. at 2:3-16; *Ex. Parte* Opp. at 2:6-3:4.)  The parties agreed that the class administrator should conduct further inquiry, which led to a determination that a substantial portion of the 10,625 class members may not have received class notice and that a second notice was necessary.  (*Id*.)  Accordingly, the parties submitted a Joint Stipulation re Class Notice and Case Calendar (Dkt. 153) requesting postponement of previously-set deadlines relating to the settlement approval and approval for the mailing of the Second Notice of Class Action Settlement to be mailed to class members (*id*.).  The request was approved on February 8, 2011 (Dkt. 154) and in accordance with that order, the second Class Notice was mailed by the Settlement Administrator on or before February 15, 2011 (*Ex Parte* App. at 2:13-16).

AXA reported that approximately 1,000 packets were returned by the United States Postal Service as undeliverable.  (*Ex Parte* App. at 2:17-23.)  AXA used Lexis Nexis to update addresses for approximately 991 class members using their social security numbers and other available information in preparation for a second re-mailing of the packets to these class members to allow them the further opportunity to opt-out.  (*See Ex Parte* App. at 3:3-16)  In its *Ex Parte* Application, AXA represented that it had obtained

2

updated address information for 576 of the approximately 1,000 class members from whom the second mailed notice had been returned as undeliverable by the U.S. Postal Service. (*Id.*) In addition, the Lexis/Nexis database reported that 415 of the previously-used addresses were accurate and up-to-date. (*Id.*) The remaining undeliverable 52 addresses did not appear in the Lexis/Nexis database. (*See Ex Parte* App. at 3 n.2.)

Based upon responses to the three mailed notices to date, only 22 of the more than 9,000 class members have requested exclusion and only three (3) have objected. Only one more class member of the several hundred for whom new addresses had been obtained for the third mailing requested exclusion and no one objected. (*See* Supplemental Declaration of James C. Sturdevant In Support of Motion for Final Approval of Class Action Settlement ("Supp. Sturdevant Decl.") filed herewith, at ¶ 3.) Additionally, one letter was received from a class member neither objecting nor opting out, but simply requesting beneficiary election (Supp. Sturdevant Decl. at ¶ 4). (*See Ex. Parte* Opp. at 4:11-6:8.)

These measures have ensured that more than 98% of all Class Members have received notice directly and that a very significant percentage of the Class will receive monetary benefits from the settlement. Accordingly, all affected Class Members have been mailed notice of the settlement and provided the meaningful opportunity to object or opt-out of the settlement.

**B.     Only Three Class Members Have Objected To The Settlement**

The parties fully complied with the Court's Order requiring it to provide adequate notice of the proposed settlement of the class action. (*See* Section II.A., *supra*.) Aon Hewitt, in conjunction with its onsite manual assembly vendor, CBI, was employed by Defendant AXA to carry out the task. (*Id.*) As this Court's preliminary approval order recognized, the class notice adequately described this action and the proposed settlement, identified the specific benefits that would be provided to the Class pursuant to the settlement, identified the amount of attorneys' fees and costs that would be paid to

3

Plaintiffs' counsel under the settlement, and provided detailed information on how a Class Member may object to the settlement or be excluded from the settlement. (Dkt. 147.) Additionally, on January 10, 2011 Plaintiffs filed their Motion for Final Approval of Award of Attorney's Fees which gave Class Members adequate opportunity to review and object to the requested fee award. (Dkt. 152.)

After providing significant notice of the parties settlement and giving the Class sufficient opportunity to review the Court's file and all of the terms of the Settlement Agreement, only three (3) of the more than 10,625 affected class members objected to the fairness of the settlement. (Sturdevant Decl. [Dkt. 156] ¶¶ 4-8.) In addition, only 22 individuals, out of more than 10,625 excluded themselves from the settlement. (*Id*. ¶ 3.) Settlement is especially appropriate in cases, like this one, where there have been few objections and requests for exclusion filed. *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577, 580 (9th Cir. 2004) (affirming settlement with 45 objections and 500 opt-outs out of 90,000 notices sent); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) (stating that when "percentage of objectors is small" this factor weighs towards finding a settlement fair); *American Employers' Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (stating that the presence of only a single objector was "of striking significance and import").

Plaintiffs have responded in full to each of the objections. (*See* Sturdevant Decl. ¶¶ 4-18.) None has merit for the reasons stated

### C. The Terms Of The Settlement Agreement Provide Meaningful Relief To The Class

The Settlement Agreement provides two primary benefits for the class. The first is a monetary component that requires that AXA establish a $2,500,000 settlement fund

4

from which it will pay the approximately 10,625 class members varying amounts based upon their individual circumstances. (Stipulation of Settlement [Dkt. 142-3] ¶ 16.) The primary factor in determining the amount of the payment to each class member is the increased amount that each class member allegedly paid for health care coverage during the relevant time period as a result AXA's implementation of the cap on its contributions to the cost of coverage. Under the allocation formula in the Settlement Agreement, each class member will receive a minimum payment of $50. Beyond that, each Class Member who was adversely affected by the implementation of the Company Contribution Limit that took effect on January 1, 2004 will receive an additional sum. The amount of that additional sum will be proportional to the additional cost that each Class Member paid as a result of the AXA contribution limit from the balance in the Settlement Fund after the $50 payments are taken into account. Those amounts will be calculated individually based upon a comparative analysis of the cost to class members for medical and dental coverage during the relevant time period with and without the company contribution limit or cap in effect.

This payment will be provided to Class Members who continue to participate in the AXA retiree health care plan in the form of credits toward the cost coverage. (Stipulation of Settlement [Dkt. 142-3] ¶ 16.) Class Members who no longer participate in the retiree health care plan will receive their settlement benefits in the form of cash, by a check mailed to their last known address. (*Id.*)

The second component of the settlement is in the nature of injunctive relief. AXA will forego the ability, otherwise available to it under ERISA, to eliminate health care benefits for class members for a period of two years and will be required to continue to subsidize the cost of such benefits at a specified level. (Stipulation of Settlement [Dkt. 142-3] ¶¶ 17-18.) AXA has agreed to continue to offer retiree health care coverage to retirees and eligible dependents for calendar years 2011 and 2012. During the 2011 calendar year, AXA will not reduce its current maximum contribution limit of $6702 per

5

retiree for non-Medicare-eligible Class Members and $3,269 per retiree for Medical-eligible Class Members. (*Id.*) For the 2012 calendar year, AXA is required to continue to offer coverage but may, at its option, reduce its maximum contribution limit by up to, but no more than, 25% of its current level. In this way, Class Members are provided the security that their health care benefits will remain in place with a predictable level of reduced contribution, if any, on the part of Defendant. (*Id.*)

The Settlement Agreement also includes a provision permitting AXA to protect itself from being locked into providing continued benefits beyond 2012. (Stipulation of Settlement [Dkt. 142-3] ¶¶ 19-20.) Specifically, the parties negotiated a provision allowing AXA to "opt out" of its commitment to provide the specified level of benefits through 2012 in the event that either house of Congress, during that time, passes a bill which would limit AXA's future right to reduce or eliminate retiree health care benefits. No such bill has yet been passed. In that event, however, the Settlement Agreement requires that AXA pay additional sums to Class Members in the aggregate amount of up to $4.5 million. (*Id.*)

## III. CONCLUSION

Accordingly, without significant exclusions by Class Members affected by the preliminarily approved settlement, and with only three objections, the Settlement Agreement should be given final approval with the Court retaining jurisdiction to enforce the provisions of the settlement.

DATED: May 25, 2011

THE STURDEVANT LAW FIRM

SCHNEIDER WALLACE BRAYTON COTTRELL KONECKY LLP

LAW OFFICE OF PAUL ADELMAN

By: */s/ James C. Sturdevant*
James C. Sturdevant
Attorneys for Plaintiffs